UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
MOHAMED NABE,

                      Petitioner,

      - against -

UNITED STATES OF AMERICA,

                      Respondent.
-----------------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
11-CV-05526 & 12-CV-5042 (CBA)

AMON, Chief United States District Judge.

Pro se petitioner Mohamed Nabe, a citizen of Guinea who was granted asylum in the United States prior to his conviction, filed two habeas petitions, the first pursuant to 28 U.S.C. § 2255 and the second pursuant to 28 U.S.C. § 2241. Nabe pleaded guilty, without a plea agreement, to one count of the use and conspiracy to use fraudulently obtained credit cards to obtain money, goods, services, and other things of value aggregating $1,000 or more within a one-year period, in violation of 15 U.S.C. § 1644(a). Because the loss in the case exceeded $100,000, the Department of Homeland Security ("DHS") has moved to reopen Nabe's immigration proceeding and to terminate his asylum status. Nabe's § 2255 habeas raises several claims of ineffective assistance of counsel against the attorney who represented him at his plea hearing, Martin Geduldig, and the attorney who represented him at his Fatico hearing and sentencing hearing, Susan Kellman. Nabe's § 2241 petition seeks a reduction of his supervised release due to amendments to the United States Sentencing Guidelines Manual ("USSG") made after his sentencing. This Court finds all of Nabe's claims meritless and dismisses his petitions in their entireties.

1

## BACKGROUND

### I. Factual Background

Nabe was arrested on September 11, 2008, for his involvement in a conspiracy to use fraudulently-obtained credit cards. His arrest was a result of an investigation commenced in the spring of 2008 by the United States Postal Inspection Service into the fraudulent procurement and use of credit cards issued by Chase Bank. (Fatico Tr. at 11.) As part of this scheme, at least 28 credit cards were applied for under the identities of real individuals. (Id. at 12-13.) After the applications were approved, many of the cards were re-routed to one of three Queens addresses after Chase would receive a telephone call, ostensibly from the credit card customers, asking that the credit cards be sent to those addresses instead of the addresses on the applications. (Id. at 12-15.) After these cards were sent to these addresses, they were used at various retail locations to purchase, among other things, luxury items. (E.g. id. at 22, 33, 39-40, 46.) All of the purchases made on these newly-issued credit cards were disputed by the named holders of the credit cards and were eventually determined by Chase to be unauthorized. (Id. at 14.) In total, over $250,000 in fraudulent charges were made on the cards sent to the Queens addresses. (See Sentencing Tr. at 6-7.)

Nabe was connected to this scheme in a variety of ways. Surveillance footage and store personnel at retail stores identified him using several of these credit cards. (Fatico Tr. at 22-25, 34.) Telephone conversations recorded by Chase in the normal course of business captured Nabe on three occasions identifying himself as the true cardholder and requesting that the newly-issued cards be sent to the Queens addresses. (Id. at 16-17, 62-63, 85-87.) The cellular telephone number Nabe used to call Chase was also used in numerous other instances to reroute credit cards to the Queens addresses. (E.g. id. at 18-19.) In addition, while conducting

surveillance, a postal inspector observed Nabe entering and exiting at least one of these Queens addresses. (Id. at 29.) At one address, an individual residing in the house told a postal inspector that Nabe no longer lived at the residence but that he frequently returned to receive mail in other people's names. (Id. at 20-21.) At another address ("the Highland address"), the landlord told investigators that Nabe lived at the location but that he knew him as "Alexis Taylor." (Id. at 29.) Several of the credit cards at issue were applied for over the internet using the IP address that was registered to Nabe's apartment at the Highland address. (Id. at 28, 60-61, 64, 75.)

Following his arrest at the Highland address on September 11, 2008, Nabe told postal inspectors that he allowed others to use his address and internet connection to obtain fraudulent credit cards. He further stated that he would then provide these individuals with the fraudulent cards that came to his address and eventually gave them the keys to his apartment so that they could retrieve the cards themselves. Nabe estimated that between 2007 and 2008, approximately 30-40 cards were sent to the two different addresses at which he resided. (Id. at 91-92.) A search of Nabe's residence executed pursuant to a warrant uncovered luxury clothing items and high-priced electronic equipment, some of which were the same brands and types as those purchased with the credit cards sent to the Queens addresses. (Id. at 45-47, 87-89, 106-07.)

A grand jury indicted the defendant on October 10, 2008, charging him with one count of using and conspiring to use fraudulently-obtained credit cards to obtain money, goods, services, and other things of value aggregating $1,000 or more within a one-year period, in violation of 15 U.S.C. § 1644(a).

## II. Plea Hearing

In December 2008, Nabe pleaded guilty, without a plea agreement, to the sole count in the indictment and indicated that he would challenge the loss amount at a Fatico hearing. Both the Government and Nabe's counsel, Mr. Geduldig, agreed that challenging the loss amount at a Fatico hearing would not automatically result in the loss of two points for acceptance of responsibility. The Government further indicated that it was premature to indicate whether or not it would recommend granting a third point for acceptance of responsibility. (Plea Tr. at 3-4.)

To take the plea, the Court placed Nabe under oath. (Id. at 6.) Nabe indicated that he discussed pleading guilty with his attorney and was satisfied with his attorney's representation. (Id. at 8.) The Court reviewed the elements of the crime to which Nabe was pleading, including the interstate commerce requirement (id. at 10-11), reviewed the maximum penalty for the offense, including the terms and conditions of supervised release (id. at 13-14), and indicated that the imposition of restitution was mandatory (id. at 15). The Court explained that at sentencing it would determine the proper guideline range. (Id. at 17-18.) The Court also informed Nabe that he could face deportation as a result of the plea. (Id. at 16.) Nabe indicated that he did not believe he was eligible for deportation because of his asylum status. The Court responded that it did not know the details of Nabe's particular situation, but that generally an individual without United States citizenship who pleads guilty to certain types of felonies is very likely going to be deported. (Id. at 16-17.)

Finally, after ascertaining that Nabe was pleading guilty voluntarily, and not in exchange for any promises, the Court heard Nabe's allocution. (Id. at 22-23.) Nabe testified that since 2004 he never personally applied for a credit card. He stated that other people with whom he was associated applied for the credit cards and if he wanted to use the cards he would purchase

the right to do so. (Id. at 23.) Nabe explained that he knew that the people he was associated with were fraudulently applying for cards and that he allowed the cards to be shipped to his address. (Id. at 23-24.) He admitted to using the fraudulently obtained cards, but claimed that he would only make small purchases with them. (Id. at 23, 25.)

The Government expressed concern that Nabe's plea, although meeting the elements of the crime, did not accurately portray his level of involvement in the charged offense and indicated that it would seek to enhance his sentencing guideline range for obstruction of justice if the allocution was false. (Id. at 25-27.) Nabe then explained that he worked with someone inside Chase and had offered to cooperate with the Government against that individual. (Id. at 28-29.)

After Nabe and the Government spoke, this Court cautioned that Nabe should "straighten out" his facts and advised that "if you made a mistake . . . you should get that squared away." Nabe's counsel indicated that Nabe did not wish to alter his allocution that he was not the one who applied for the credit cards (id. at 29-31) and this Court accepted Nabe's plea (id. at 31).

A two-day Fatico hearing to determine the monetary amount of the fraud was held from July 7, 2009 to July 8, 2009. That Fatico hearing revealed Nabe's extensive role in the charged conspiracy. On July 29, 2009, following the Fatico hearing, the Court sentenced Nabe to 48 months' incarceration, followed by a supervised release term of three years, and ordered payment of restitution in the amount of $252,981. Nabe's appeal to the Second Circuit was rejected and a mandate issued on November 5, 2010. On January 11, 2011, Nabe filed a petition for a writ of certiorari with the Supreme Court, which was denied on February 22, 2011. On November 4, 2011, Nabe filed a § 2255 petition seeking to vacate, set aside, or correct his

sentence. On September 28, 2012, Nabe filed a § 2241 petition seeking a reduction of his supervised release

## I. Ineffective Assistance Standard

This Court first turns to the claims raised in the § 2255 petition. Ineffective assistance of counsel claims are governed by the framework articulated in Strickland v. Washington, 466 U.S. 668 (1984). To prevail on an ineffective assistance of counsel claim under Strickland, the petitioner must demonstrate "(1) that his counsel's performance was deficient, and (2) 'that the deficient performance prejudiced the defense.'" Hemstreet v. Greiner, 491 F.3d 84, 89 (2d Cir. 2007) (quoting Strickland, 466 U.S. at 687)).

Under Strickland's deficiency prong, the petitioner must show that counsel's representation "fell below an objective standard of reasonableness" as measured by "prevailing professional norms," Strickland, 466 U.S. at 687-88, and "'evaluated from counsel's perspective at the time of the alleged error,'" United States v. Pitcher, 559 F.3d 120, 123 (2d Cir. 2009) (quoting Kimmelman v. Morrison, 477 U.S. 365, 381 (1986)). In considering whether a petitioner has met the deficiency prong, courts must be "highly deferential" to counsel's performance and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.

To establish Strickland's second prong, the petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding"; rather, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 693-94. If a defendant complains that "ineffective assistance led him to accept a plea offer as opposed to

6

proceeding to trial, the defendant will have to show 'a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" Missouri v. Frye, 132 S. Ct. 1399, 1409 (2012) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). Conclusory allegations that a petitioner would have insisted on proceeding to trial are "'generally insufficient to establish actual prejudice under Strickland.'" Calderon v. United States, 953 F. Supp. 2d 379, 385 (E.D.N.Y. 2013) (quoting Scott v. Superintendent, Mid-Orange Correctional Facility, No, 03-CV-6383, 2006 WL 3095760, at *9 (E.D.N.Y. Oct. 31, 2006)).

## II. Application of Strickland to Nabe's § 2255 Petition

Nabe's § 2255 petition asserts eight ineffective assistance of counsel claims, four against Geduldig and four against Kellman. For the reasons described below, this Court denies Nabe's petition in its entirety.

### A. Claims Based on Geduldig's Assistance

#### 1. Pleading Guilty Without a Plea Agreement

Nabe's first claim is that Geduldig provided ineffective assistance when he advised Nabe to plead guilty without the benefit of a plea agreement, assuring him that proceeding in this manner would allow him to challenge the loss amount at a Fatico hearing while preserving the ability to be awarded a reduction for acceptance of responsibility. Nabe claims that the failure to enter into a plea agreement resulted in his not receiving a reduction for acceptance of responsibility.

Even if Nabe could meet the first prong of the Strickland test, he cannot show that he was prejudiced as a result of his counsel's advice. Whether or not Nabe entered into a plea agreement with the Government, this Court would not have granted a reduction for acceptance of responsibility. At his plea hearing, Nabe falsely testified that he never applied for a credit card,

7

that his involvement in the scheme was limited to letting the people who applied for cards use his address, and that at times he would purchase the right to use one of the fraudulently obtained credit cards to make limited purchases. (Plea Tr. at 23.) After Nabe allocuted, the Government indicated that it "was a little bit troubled by that allocution" and went on to explain that the evidence indicated that Nabe's role in the fraud was far more extensive then he admitted. (Id. at 25-27.) This Court provided Nabe an opportunity to correct any misstatements, an opportunity that Nabe rejected. (Id. at 29-31.) The evidence at the Fatico hearing supported the Government's concern. (See generally Fatico Tr.) At sentencing, this Court stated that Nabe testified falsely at his plea hearing and, as a result, was not entitled to a reduction for acceptance of responsibility. (Sentencing Tr. at 17-19.) This Court declined to award a reduction for acceptance of responsibility because Nabe lied about his role in the scheme, not because he challenged the loss amount at a Fatico hearing.

2. Immigration Implications

Nabe also claims his counsel was ineffective assistance for failing to adequately advise him that his guilty plea could subject him to removal proceedings. This claim likewise has no merit. In his affidavit, Geduldig stated that he and Nabe discussed the likelihood of deportation should Nabe plead guilty. Geduldig informed Nabe that deportation was a possible result of pleading guilty, but Nabe stated that he was not concerned about being deported because he had asylum status and that the subject of deportation was "closed." (Gov't Opp., Ex. A, Geduldig Aff. ¶ 4.) This averment is not disputed by Nabe. Where, as here, the immigration consequences of a guilty plea are not clear, a defense attorney need do no more than advise a non-citizen that "pending criminal charges may carry a risk of adverse immigration consequences." Padilla v. Kentucky, 559 U.S. 356, 369 (2010) Counsel met his burden.

8

Even if counsel's affidavit was disputed and his advice was not entirely clear, this Court advised Nabe that he could not necessarily rely on his asylum status and that he should consider deportation a possible consequence of his guilty plea. Nabe assured the Court, as he did Mr. Geduldig, that he was not concerned about being deported because he had spoken to an immigration official and he believed that he had not committed a crime that would make him eligible for deportation. (Plea Tr. at 16.) In light of this Court's advice, Nabe cannot show prejudice even if his counsel's assistance was deficient.

### 3. Failure to File Suppression Motions

Nabe's further faults counsel for not moving to suppress Nabe's post arrest statements and a search of a vehicle located outside of Nabe's apartment building. These claims are meritless because it is well settled that "[a] defendant who pleads guilty unconditionally while represented by counsel may not assert independent claims relating to events occurring prior to the entry of the guilty plea. 'He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [acceptable] standards.'" United States v. Coffin, 76 F.3d 494, 497 (2d Cir. 1996) (alteration in original) (quoting Tollett v. Henderson, 411 U.S. 258, 267 (1973)). The claims raised here relate to events occurring prior to the entry of the guilty plea and are not cognizable. Moreover, as discussed in the context of Nabe's fourth claim, he cannot show that he was prejudiced by counsel's failure to file a suppression motion.

### 4. Waiver of Right to File Suppression Motions

Nabe's fourth claim is that he received ineffective assistance because Geduldig failed to advise him that pleading guilty would preclude bringing a suppression motion. Nabe cannot show that he was prejudiced by counsel's alleged ineffective assistance because the Court

informed Nabe that if he proceeded to trial he would have had the right to challenge the Government's evidence, and that by pleading guilty he was giving up such trial rights. (Plea Tr. at 12.)

Furthermore, there is no indication that the suppression motions would have been successful. The record reflects that Nabe's post-arrest statements were taken after he waived his Miranda rights, and that Nabe did not have standing to challenge the search of the car. (Fatico Tr. at 90, 114.) Finally, Nabe presented no evidence that establishes a reasonable probability that he would not have pleaded guilty even if he had prevailed on the suppression motions. The Government's evidence against him was substantial and most of it did not rest on Nabe's post arrest statements or items seized from the vehicle. (See generally, Fatico Tr.)

B. Claims Based on Kellman's Counsel

At a status conference held on March 5, 2009, after Nabe pleaded guilty but before his Fatico hearing, Kellman replaced Geduldig as counsel for Nabe. (DE # 35.) Nabe's § 2255 petition asserts four ineffective assistance of counsel claims relating to Kellman's representation.

1. Withdrawal of Plea and the Conspiracy Element

Nabe's first ineffective assistance claim asserts that Kellman failed to make arguments regarding the conspiracy element of the crime to which he pleaded guilty. It is unclear whether Nabe's contention is that Kellman's performance was deficient for failing to assert that there was insufficient evidence to support the conspiracy element, or for failing to assert that he did not comprehend the conspiracy element. Under either interpretation of Nabe's petition, this Court concludes that Nabe cannot show that his counsel's performance was ineffective.

As an initial matter both arguments are meritless because Nabe pleaded guilty to 15 U.S.C. § 1664(a) which criminalizes using, attempting to use, or conspiring to use a fraudulently

10

obtained credit card. At a Fatico hearing on July 8, 2009, this Court found that Nabe's allocution clearly satisfied the "uses" element and that therefore there was no need to decide whether the allocution also satisfied the conspiracy element. (Fatico Tr. at 137-38.) At his sentencing, this Court further noted that "[a]t no time did [Nabe] contest the fact that he was guilty of using fraudulently obtained credit cards" and that his allocution was therefore clearly sufficient to satisfy 15 U.S.C. § 1644(a). (Sentencing Tr. at 7-8.) Any argument relating Kellman's failure to challenge Nabe's plea on the basis of the conspiracy element is meritless since Nabe's plea satisfied the uses element. An attorney is not ineffective for failing to raise frivolous arguments. See Lockhart v. Fretwell, 506 U.S. 364, 382-83 (1993) ("[I]neffective-assistance claims predicated on failure to make wholly frivolous . . . arguments will generally be dispensed with under Strickland's first prong.").

Even assuming the conspiracy element needed to be satisfied, to the extent Nabe's claim relies on the argument that his plea did not satisfy the conspiracy charge, that argument still fails fails for the simple reason that she made that argument. (See 4/7/09 Tr. at 3-5; DE # 48 at 1; Fatico Tr. at 2-9.) Because Kellman raised the argument that there was insufficient evidence to support the conspiracy charge, Nabe cannot claim ineffective assistance on the basis that she failed to raise that argument. Finally, Nabe cannot show prejudice because he admitted that he worked with someone inside Chase Bank who provided him with information used in connection with the fraud scheme and offered to cooperate with the Government against the individual who provided him with that information. (Plea Tr. at 28-29.) This testimony is sufficient to establish the conspiracy element.

Nabe fares no better to the extent he argues that Kellman was ineffective for failing to argue that he was entitled to withdraw his plea because he did not comprehend the meaning of

the conspiracy element. Once again, counsel cannot be ineffective for failing to make frivolous arguments. This Court explained that the Government could satisfy the conspiracy element by demonstrating that Nabe worked with someone else to perpetrate the fraud. (Plea Tr. at 30.) Moreover, since Nabe was also charged with "uses" it was not necessary that he even understand the nature of a conspiracy. Finally, for reasons cited above, Nabe has failed to show prejudice. Even if Kellman had moved to withdraw Nabe's plea on the grounds that Nabe did not understand the meaning of a conspiracy, this Court would have rejected that motion.

2. <u>Withdrawal of the Plea and the Interstate Commerce Element</u>

Nabe's second claim is that Kellman failed to argue that he should have been permitted to withdraw his plea because of defects in the interstate commerce element of the charge. Again, it is unclear if Nabe's claim is that Kellman was ineffective for failing to argue that the interstate commerce element was not satisfied or for failing to argue that Nabe did not comprehend the meaning of the interstate commerce element. In either case, Kellman's decision not to assert an argument that the plea should be withdrawn on the basis of some deficiency relating to the interstate commerce element was not ineffective. At time that he pleaded guilty, the Court explicitly told Nabe that the Government "would have to prove that the transactions affected interstate commerce." (Plea Tr. at 11.) Nabe informed the Court that he understood the elements the Government would need to prove to convict him of the offense (id.), that he had no questions about any of the matters the Court had previously explained to him, and that he was prepared to plead guilty (id. at 22). The Government proffered that "the online applications certainly had to travel across state lines and some of the goods purchased had to travel across state lines." (Id. at 25.) Because Nabe stated that he understood the interstate commerce

12

element and the Government proffered the existence of evidence that supported that element, Kellman was not ineffective for failing to make these challenges.

### 3. Restitution

Nabe next argues that he received ineffective assistance because Kellman failed to argue that the court's loss and restitution determinations: (1) were arbitrary, (2) were not based upon affidavits of loss submitted by identifiable victims, (3) failed to consider Nabe's ability to pay the ordered amount, and (4) were improper because he was not sentenced to probation. The Second Circuit held that because restitution orders cannot be challenged on a § 2255 petition, district courts lack subject matter jurisdiction to grant ineffective assistance of counsel claims based on a counsel's failure to object to a restitution order. Kaminski v. United States, 339 F.3d 84 n.1 (2d Cir. 2003). Accordingly, Nabe's claims fail.

### 4. Guideline Range

Nabe's final ineffective assistance claim is based on his counsel's failure to argue that the guideline range determined by the Court improperly included a guidelines enhancement — U.S.S.G. § 2B1.1(b)(10)(C)(i), unauthorized use of a means of identification to produce another means of identification — that was not contained in the Government's proposed plea agreement.

Counsel's failure to raise this argument was not deficient.[1] Nabe did not sign the Government's plea agreement, and he swore under oath that no one had made him any promises regarding his future sentence. (Plea Tr. at 22-23.) In addition, the Court told Nabe during the plea hearing that it was not bound by any guideline estimate the Government had provided. (Id. at 18-19.) Because this Court was not bound by the plea agreement, it was entitled to apply the enhancement which was supported by evidence produced during the Fatico hearing. (Sentencing

---

[1] Although Kellman initially objected to the inclusion of the enhancement, she withdrew the objection because she believed that the evidence produced at the Fatico hearing supported the enhancement. (Sentencing Tr. at 9-10.)

13

Tr. at 9-10.) This Court finds that Kellman's failure to challenge the application of U.S.S.G. § 2B1.1(b)(10)(C)(i) was not deficient and that Nabe was not prejudiced by Kellman's decision not to challenge the application of this enhancement.

### III. § 2241 Claims

Nabe filed a § 2241 petition claiming that the Court should reduce the term of his supervised release because of subsequent amendments to the United States Sentencing Guidelines Manual. Nabe's petition is improperly filed. His petition does not challenge the execution of his sentence, and therefore cannot be brought pursuant to § 2241. See Levine v. Apker, 455 F.3d 71, 77-78 (2d Cir. 2006) ("A challenge to the execution of a sentence—in contrast to the imposition of a sentence—is properly filed pursuant to § 2241."). Nor can his petition be construed as a § 2255 petition because it does not challenge the imposition of his sentence. See id. Nabe does not contend that this Court erred in the application of the guidelines in effect at the time of sentencing and a court must "sentence under the guideline provision in effect on the date of sentencing." Rodriguez-Alonso v. United States, 807 F. Supp. 21, 22 (E.D.N.Y. 1992) (finding that petitioner's § 2255 petition failed because it sought a sentence reduction due to a recent USSG amendment); United States v. Rios-Paz, 808 F. Supp. 206, 209-210 (E.D.N.Y. 1992) (construing a § 2255 petition seeking a reduction of petitioner's sentence due to a recent amendment to the USSG as a request for a reduction under 18 USC § 3582(c)(2) and holding that the amendment at issue did not apply retroactively). Instead, Nabe argues that changes to the guidelines form a basis for altering the terms of his supervised release.

Nabe's petition is more appropriately considered a motion to reduce his supervised release and this Court liberally construes Nabe's petition as such a motion made pursuant to either 18 U.S.C. § 3582(c)(2) or 18 U.S.C. § 3583(e). Section 3582(c)(2) governs a

14

modifications to the term of imprisonment, and Section 3583(e) governs modifications to the term of supervised release. For the reasons described below, Nabe's petition fails under either section.

A. <u>Amendments do not Apply Retroactively</u>

Nabe cannot seek a reduction in supervised release pursuant to 18 U.S.C. § 3583(c)(2) because he challenges the term of his supervised release, not the term of his imprisonment.. <u>United States v. Guess</u>, 541 F. Supp. 2d 399, 401 (D. Me. 2008) (holding that 18 U.S.C. § 3582(c)(2) governed reductions in the term of imprisonments and 18 U.S.C. § 3583(e) governed reductions in the term of supervised release.) Even if § 3583(e) did apply, Nabe would still not be entitled to relief because the guidelines he involves are not retroactive pursuant to that provision. Section 3582(c)(2) provides that a district court may reduce a term of imprisonment "based on a sentencing range that has subsequently been lowered by the Sentencing Commission" if that reduction is consistent with the "applicable policy statements issued by the Sentencing Commission." The Sentencing Commission policy statement in § 1B1.10 governs the retroactive application of amendments to the Sentencing Guidelines. <u>Torres v. United States</u>, 829 F. Supp. 98, 99 (S.D.N.Y. 1993); <u>see</u> <u>United States v. Garcia</u>, 339 F.3d 116, 119-20 (2d Cir. 2003). Section 1B1.10(a)(2) provides that a term of imprisonment may not be reduced if "[n]one of the amendments listed in subsection (c) is applicable to the defendant." The changes to the USSG at issue here were both made pursuant to Amendment 756, which is not one of the amendments listed in § 1B1.10(c).

Nabe fares no better if his petition is construed as a motion under 18 U.S.C. § 3583(e). The relevant sections of 18 U.S.C. § 3583(e) provide that a court may "terminate a term of supervised release . . . at any time after the expiration of one year of supervised release . . . if it is

15

satisfied that such action is warranted by the conduct of the defendant." The amendments were not held to apply retroactively, and in the absence of any indication otherwise the "traditional presumption against retroactivity" applies. See Martin v. Hadix, 527 U.S. 343, 352 (1999). Therefore, if Nabe is entitled to a reduction in his supervised release it must be on account of his post-release conduct. However, Nabe's post-release conduct, which included a violation of his supervised release, does not warrant a reduction of his term of supervised release.

B. Assuming Amendments Applied Retroactively

Even if the changes applied retroactively, they would not provide a basis for altering Nabe's term of supervised release. Nabe first argues that, as amended, USSG § 5D1.2 provides for a shorter term of supervised release for a defendant convicted of a class C or D felony than it provided at the time of his sentencing. This assertion is incorrect. At the time of sentencing the USSG provided for at least two years, but not more than three years, of supervised release for a defendant convicted of a Class C or D felony. U.S. Sentencing Guidelines Manual § 5D1.2 (2008). The USSG, as amended, states that the term of supervised release for a defendant convicted of a class C or D felony should be between one and three years. U.S. Sentencing Guidelines Manual § 5D1.2 (2013). This Court sentenced Nabe to a term of three years, which is within both the 2008 and the 2013 guideline range. The amendment to the USSG does not impact the term of supervised release imposed by this Court.

Nabe's second claim is that, as amended, USSG § 5D1.1(c) provides that supervised release ordinarily should not be imposed if it is not required by statute and the defendant is a deportable alien who likely will be deported after imprisonment. U.S. Sentencing Guidelines Manual § 5D1.1(c) (2013). Nabe is correct that at the time of his sentencing USSG § 5D1.2 did not contain part (c). U.S. Sentencing Guidelines Manual § 5D1.1 (2008). However, the

guidelines, even as amended, do not prohibit a court from imposing supervised release. In addition, Application Note 5 indicates that the court should impose supervised release on a defendant if the court determines that imposing such supervision would provide an added measure of deterrence and protection based on the facts and circumstances of a particular case. Because Nabe indicated that he might not be eligible for deportation, this Court's imposition of supervised release was reasonable and the decision to impose a three-year term of supervised release would not have been impacted by the guidelines changes.

## CONCLUSION

For the foregoing reasons, Nabe's motions pursuant to 28 U.S.C. § 2255 and 28 U.S.C. § 2241 are denied. Since Nabe has failed to make a "substantial showing of the denial of a constitutional right," a Certificate of Appealability shall not issue. 28 U.S.C. § 2253. The Clerk of Court is directed to enter judgment accordingly and to close this case.

SO ORDERED.

Dated: Brooklyn, New York
August 19, 2014

s/Carol Bagley Amon
Carol Bagley Amon
Chief United States District Judge